UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    JACOB R. MORGAN,                                  Chapter 7
                                                                           Case No. 16-61604

                                      *Debtor.*

APPEARANCES:

Selbach Law Firm, PLLC                                  *James F. Selbach, Esq.*
*Counsel for Debtor*
250 South Clinton Street
Suite 203
Syracuse, New York 13202

Weltman & Moskowitz, LLP                         *Michael L. Moskowitz, Esq.*
*Attorneys for Pentagon Federal Credit Union*      *Michele K. Jaspan, Esq.*
270 Madison Avenue, Suite 1400
New York, New York 10016-0601

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

*I. Introduction*

      The contested matter before the Court is a motion by Debtor Jacob R. Morgan ("Debtor") against Pentagon Federal Credit Union ("PenFed") filed on June 7, 2017 (the "Motion," ECF No. 22), wherein Debtor seeks sanctions against PenFed pursuant to 11 U.S.C. § 105 for civil contempt for an alleged violation of the discharge injunction provided by 11 U.S.C. § 524(a)(2).[1] PenFed filed opposition to the Motion on August 2, 2017, asserting that no discharge violation had in fact

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2012) (The "Bankruptcy Code").

occurred and placing Debtor's attorney, James F. Selbach, Esq.,[2] on notice that PenFed was reserving its right to file a separate motion for sanctions against Debtor and Attorney Selbach pursuant to Federal Rule of Bankruptcy Procedure 9011(c), unless Debtor timely withdrew his Motion (the "Opposition," ECF No. 27).[3] Debtor responded to PenFed's Opposition with a Memorandum of Law on August 9, 2017, asserting, *inter alia*, that Rule 9011 sanctions were not appropriate in this case (the "Response," ECF No. 29). The Court first heard this matter on its regularly scheduled Utica motion calendar on August 10, 2017. Following this hearing, the Court took the Motion under advisement in order to issue this opinion. Based upon the record, oral argument, and the submissions of counsel, the Court makes the following findings of fact and conclusions of law in accordance with Rules 7052 and 9014.

*II. Jurisdiction*

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1), and (b)(2)(A).

*III. Facts*

The facts in this case are undisputed and relatively straightforward. The following facts were derived from the parties' submissions and the Court's docket.

Debtor filed a voluntary petition for bankruptcy protection under chapter 7 of the Bankruptcy Code on December 7, 2016. (ECF No. 1.) On his Schedule E/F, Debtor listed PenFed as an unsecured creditor with an unsecured debt due in the amount of $17,323.05. On March 20, 2017, this Court entered an Order Discharging Debtor (the "Discharge Order," ECF No. 15). As

---

[2] Meade H. Versace, Esq. filed Debtor's case on his behalf and represented Debtor through the closing of the case. However, as has become common practice in this District, Debtor retained Attorney Selbach for the limited purpose of reopening his case and filing the current discharge injunction violation and contempt motion.

[3] Unless otherwise indicated, all rules references are to the Federal Rules of Bankruptcy Procedure.

set forth in the Bankruptcy Noticing Center's Certification of Notice filed on March 22, 2017 (ECF No. 16), PenFed was electronically served with the Discharge Order on the same date.

On May 25, 2017, Debtor filed an ex-parte motion to reopen his case (ECF No. 19), which the Court granted by Order issued June 6, 2017 (ECF No. 21). Debtor then filed the current Motion.

In support of the Motion, Debtor attached email communications between himself and PenFed's representatives. (Motion, Ex. A.) On April 6, 2017, Debtor initiated contact with the credit union when he sent his original email to PenFed to inform the credit union that he was unable to initiate fund transfers and that any past debt owed to PenFed should have been discharged. In this email, Debtor also stated that he would like to "rebuild" his account and asked PenFed to contact and advise him on how to begin this process. PenFed's responsive email to Debtor, also dated April, 6, 2017, stated that Debtor's previous checking account was closed due to overdraft with an amount of $9.17 being liquidated. This email also indicated that Debtor's thrifty credit service was closed resulting in a charged off status and a remaining balance of $500.00. Finally, PenFed's responsive email stated that Debtor needed to pay all of these amounts in full for the credit union to remove the hold from Debtor's accounts or to process a checking account application. Instructions regarding how to pay the amounts owed were included at the bottom of the email.[4]

On August 10, 2017, PenFed filed its Opposition to Debtor's Motion. Attached to this filing was a copy of PenFed's standard membership agreement form, which included the following statement under paragraph four: "If I have caused PenFed to incur any loss due to my activities, or if any account at PenFed is maintained by me in a manner that PenFed, in its sole discretion,

---

[4] Debtor did not provide evidence of his alleged telephone conversations with PenFed regarding his efforts to open a new checking account and inquiring into why debts discharged in bankruptcy would need to be repaid. Accordingly, because no evidence of these conversations or their contents have been submitted, the Court did not consider these allegations in forming its Findings of Fact and Conclusions of Law.

deems contrary to sound financial practice, I agree that PenFed may terminate all accounts or services which I may receive from PenFed with the exception of my Regular Share account."[5] (Opposition, Ex. A.)

Two email chains and a letter between Debtor and PenFed were also attached to the Opposition. Specifically, the first email chain between Debtor and PenFed was identical to the email chain previously discussed as Exhibit A in the Motion. (Opposition, Ex. B.) The second chain of emails, dated between May 2 and May 9, 2017, documented the communications between Attorney Selbach and Michael Jaspan, Esq., counsel for PenFed. This string of emails pertained to settlement discussions concerning alleged damages incurred by Debtor resulting from his previous contact with PenFed when trying to reopen his accounts. (Opposition, Ex. C.) Finally, a letter from Attorney Jaspan to Attorney Selbach was included with the Opposition. This letter, dated July 19, 2017, requested that Attorney Selbach and Debtor withdraw the Motion. The letter also stated that if no written confirmation of the withdrawal was received by July 24, 2017, PenFed reserved the right to oppose the Motion and proceed with Rule 9011 sanctions. (Opposition, Ex. D.)

*IV. Arguments*[6]

As previously stated, the facts in this case are uncomplicated. The only disputed issues of law are: (1) whether PenFed willfully violated the discharge injunction imposed by the discharge order pursuant to § 524(a)(2) when it responded to Debtor's email inquiry by stating that Debtor must pay all amounts previously due to PenFed in full before any account in Debtor's name could be reinstated or newly opened; and (2) if indeed there was a violation under § 524(a)(2), what

---

[5] Neither party has asserted (or proved) that a PenFed Regular Share account policy was involved in the present Motion as specified in paragraph four of PenFed's membership agreement.

[6] Rule 9011 sanctions are not discussed in this opinion because, as stated by Sara Temes, Esq., local counsel for PenFed at the August 10, 2017 hearing on this Motion, PenFed in its Opposition was merely reserving its right to file such a motion and not actively seeking Rule 9011 sanctions. Furthermore, no independent motion for Rule 9011 sanctions was ever filed by PenFed against Attorney Selbach or Debtor.

contempt sanctions should be imposed on PenFed for its conduct based upon this Court's inherent authority under § 105(a).[7]

In support of his claim that PenFed willfully committed a discharge injunction violation, Debtor argues that PenFed improperly conditioned its provision of future financial services to Debtor upon Debtor's payment of pre-petition debt. Debtor argues that, in light of this § 524(a)(2) violation, the Court should impose sanctions on PenFed for any actual damages, attorney's fees, and/or costs related to Debtor's prosecution of this motion.

In opposition to the Motion, PenFed contends that no violation of the discharge injunction occurred because it responded to Debtor's email inquiries simply indicating that, in accordance with PenFed's membership policies, all delinquent amounts would need to be paid in full before Debtor's membership could be reinstated. PenFed submits that this comment was not an affirmative attempt to collect a discharged debt or a demand for repayment of a discharged debt, but merely a generic statement of PenFed's policies applicable to all members in response to Debtor.

PenFed further argues that if the Court finds that PenFed violated § 524(a)(2), the Court should consider PenFed's attempt to settle the current Motion with Debtor as evidence of its good faith effort to mitigate damages, if any.[8] Accordingly, PenFed argues that it should not be penalized

---

[7] Section 524 does not include an explicit enforcement mechanism for violations of the discharge injunction. Instead, such violations are punishable by civil contempt. *In re Nassoko*, 405 B.R. 515, 520 (Bankr. E.D.N.Y. 2009).

[8] In addressing PenFed's argument that it sought to mitigate damages, the parties dispute whether the Court may consider statements made between the parties during prior settlement negotiations. Specifically, Attorney Selbach contends that the evidence of settlement discussions included in PenFed's Exhibit C is barred by Federal Rule of Evidence 408. However, at the August 10, 2017 hearing, Attorney Temes argued that Rule 408's underlying purpose was to disallow settlement evidence aimed at proving the validity or amount of a disputed claim and that because PenFed wanted to use the settlement discussions to merely show its attempt to mitigate damages, such evidence should be able to be considered by the Court. *See* Fed. R. Evid. 408; 2-408 Weinstein's Federal Evidence §§ 408.02[1] & 408.08[1] (MB 2017) (Rule 408 generally bars evidence concerning efforts to settle or compromise a dispute in furtherance of the policy of promoting the compromise and settlement of disputes, but does not require exclusion if the evidence is offered for some purpose other than proving the validity or amount of a disputed claim.) While there is merit to Attorney Selbach's argument that PenFed's settlement discussion emails should not be considered by the Court in forming this decision, the Court need not address it given its narrow ruling in this case.

for any additional attorney's fees incurred due to the unnecessarily prolonged prosecution of this matter.

*V. Discussion*

"The fundamental purpose of bankruptcy law is to provide a fresh start to the honest but unfortunate debtor." *In re Dogar-Marinesco*, No. 09-35544, 2016 Bankr. LEXIS 4111, at *13 (Bankr. S.D.N.Y. Dec. 1, 2016) (internal quotations and citations omitted). As the bankruptcy court in *In re Dogar-Marinesco* concisely explained, "[t]o that end, the discharge injunction is essential to ensuring that those debtors enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Id.*

Pursuant to § 727(b), when a debtor receives a discharge under chapter 7 of the Bankruptcy Code, he is discharged from all personal liability relating to pre-petition debts. In turn, this discharge triggers an injunction under § 524(a)(2), which states that no act to collect, recover, or offset any discharged debt may be commenced as to the personal liability of a debtor. 11 U.S.C. § 524(a)(2).

While § 524 does not include its own remedy for discharge violations, willful violations are punishable by contempt. *In re Nassoko*, 405 B.R. 515, 520 (Bankr. E.D.N.Y. 2009). For a finding of contempt, the movant must show that the violating party knew that the discharge injunction was invoked and intended the actions that violated the discharge injunction. *In re Dogar-Marinesco*, 2016 Bankr. LEXIS 4111, at *41 (citing cases). "No evidence of ill will or malice is necessary to prove willfulness." *Id.* at *51 (citing In re Roush, 88 B.R. 163, 164-65 (S.D. Ohio 1988)).

In order to prove a discharge injunction violation, the debtor must establish that the creditor: (1) had notice of the debtor's discharge; (2) intended the actions that constituted the

violation; and (3) acted in a way that improperly coerced or harassed the debtor (internal quotations and citations omitted). *Bates v. CitiMortgage, Inc.*, 844 F.3d 300, 304 (1st Cir. 2016).[9]

In the current case, it is undisputed that PenFed had notice of Debtor's discharge and that it intended to send the emails to Debtor advising him of the ways he could reinstate his accounts with PenFed. Accordingly, the first two elements have been satisfied. The third element is therefore determinative as to whether PenFed's emails resulted in the improper coercion or harassment of Debtor in an attempt to collect on a discharged pre-petition debt. To answer this question, the Court finds the Third Circuit's holding in *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81 (3d Cir. 1988), to be particularly instructive.

In that case, on appeal, the debtor sought a declaratory judgment ruling that a letter she received from the Pennsylvania State Employees Credit Union, a creditor in her chapter 7 bankruptcy, violated § 524(a)(2) because it indicated that, in accordance with its membership policy, the credit union would deny future services to the debtor unless she reaffirmed all pre-petition debts owed to the credit union prior to discharge. *Id.* at 82. The letter was sent in response to debtor's counsel's letter to the credit union informing it of the bankruptcy filing and the imposition of the automatic stay. *Id*. Specifically, the credit union's letter to the debtor states in relevant part, "It is the Credit Union's policy to deny future services to members when any portion of the debt is discharged in bankruptcy."[10] *Id.*

---

[9] While post-discharge contacts initiated by the debtor with a creditor do not necessarily violate the discharge injunction, such contact may still be a violation based on the specific facts and circumstances of a given case. *See Nash v. Clark Cty. Dist. Atty's. Office (In re Nash)*, 464 B.R. 874, 881 (B.A.P. 9th Cir. 2012). The fact that Debtor initiated contact with PenFed in this case, however, is not determinative.

[10] The Court notes that the membership policy of the credit union in the *Brown* case is substantially similar to the membership policy that PenFed stated in its emails to Debtor. The Court takes judicial notice of the fact that it is common for member based financial institutions such as credit unions to have such policies. *See* Fed. R. Evid. 201(b) (Rule 201(b)(2) specifies that a court may take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.).

After examining the above language, the Third Circuit held that the credit union's purpose in sending the letter was not to improperly coerce or harass the debtor, but merely to inform debtor of its policy.[11] *Id.* at 85. In its reasoning, the Third Circuit stated that while any refusal of future services by a pre-petition creditor has some coercive effect, the financial conveniences provided by a credit union to a debtor do not rise to such a level where a threat or conditioning of their withdrawal of services is necessarily coercive. *Id.* (citing *Morgan Guaranty Trust Co. v. American Savings and Loan Ass'n.*, 804 F.2d 1487, 1491 n.4 (9th Cir. 1986) (comparing cases), *cert. denied*, 482 U.S. 929, 107 S. Ct. 3214, 96 L. Ed. 2d 701 (1987)). Accordingly, the Third Circuit found that the credit union had not contravened the discharge injunction as provided by § 524(a)(2) and that, based on its membership policy of which the debtor had notice, the debtor was not entitled to have her accounts at the credit union restored notwithstanding the fact that the debt she owed had been discharged. *Id.* at 86.

In adopting the Third Circuit's reasoning in *Brown v. Pennsylvania State Employees Credit Union*, this Court finds that PenFed did not act to improperly coerce or harass Debtor into paying a pre-petition debt when it responded to Debtor's inquiry. Instead and pursuant to PenFed's policy, the credit union simply informed Debtor that all delinquent account balances would need to be paid in full if Debtor wished to reinstate or activate a new checking account. Because the Court

---

[11] The issue of a discharge injunction violation was not considered by the bankruptcy court because a discharge had not yet been granted to the debtor. Instead, the bankruptcy court held that the credit union did not violate the automatic stay, as imposed by § 362(a), when it contacted the debtor because the credit union did not act with an intent to recover its claim. Furthermore, while the bankruptcy court did hold that the credit union committed a technical violation of the automatic stay by sending the letter directly to the debtor instead of her attorney, that holding is not relevant in the current Motion for two reasons. First, this Court does not subscribe to the technical or inadvertent violation theory. Second, at the time the alleged discharge violation occurred in this case, Debtor was no longer represented by counsel since his bankruptcy case had already been administratively closed. On appeal, the Third Circuit held that the letter correspondence between the debtor and credit union did not constitute an automatic stay or discharge injunction violation. Ultimately, this Court's decision is consistent with both of the Third Circuit's holdings because the standard for stay violations and discharge violations are interchangeable with respect to the issue of coercion. *See Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 7 n.7 (B.A.P. 1st Cir. 2009) (citing *In re Pratt*, 462 F.3d 14, 19, 21 (1st Cir. 2006)).

finds that PenFed's statements to Debtor did not violate § 524(a)(2), it did not inhibit Debtor's fresh start. To the contrary and as alluded to in the *Brown* case, it would be more reasonable and practical for a debtor to find an alternative institution to cater to his financial needs post-discharge, than to be required to pay pre-petition debt owed to a credit union in order to reinstate a financial relationship. Such requirement in and of itself does not equate to improper coercion or harassment. Accordingly, while Debtor may have one less financial institution with which he can do business, the opportunity he received to take full control of his financial future after being granted his chapter 7 discharge is no less promising.

*VI. Conclusion*

For the foregoing reasons, the Court finds that PenFed did not violate Debtor's discharge injunction as imposed by § 524(a)(2) of the Bankruptcy Code.

Accordingly, it is hereby

ORDERED, that Debtor's Motion is denied.

It is SO ORDERED.

Dated: December 12, 2017
      Utica, New York

                                        /s/Diane Davis_____
                                        DIANE DAVIS
                                        United States Bankruptcy Judge